# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 3275 | **DATE** | 2/19/2002 |
| **CASE TITLE** | JMS Development vs. Bulk Petroleum Corp.,etal | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: We find that defendants owe JMS $20,725.30 for fees and costs. However, since JMS acknowledges that defendants have already paid JMS $10,352.85 in partial satisfaction of the judgment, we order defendants to pay JMS the remaining $10,382.65.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 2 0 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | 2/19/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| GL | courtroom deputy's initials | | GL | |
| | | | mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
02 FEB 19 PM 4: 11
FILED
Date/time received in central Clerk's Office

JMS DEVELOPMENT CO.,            )
                                   )
       Plaintiff,            )
                                   )
     v.                    )     Case No. 95 c 3275
                                   )
                                   )
BULK PETROLEUM CORP.,        )
et. al.                        )           **DOCKETED**
                                   )
       Defendants.     )          FEB 2 0 2002

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

       Bulk Petroleum Corporation ("Bulk") and its president, Darshan Dhaliwal ("Dhaliwal"), owned and operated a gas station on property leased from Arthur and Evelyn Zaltzman (the "Zaltzmans"). The gas station is adjacent to property owned by JMS Development Company ("JMS"). JMS discovered that leakage from Bulk's underground storage tanks had contaminated JMS property and sued Bulk, Dhaliwal, and the Zaltzmans in this court. On September 18, 1997, Bulk and Dhaliwal (collectively, "Defendants") entered a consent decree which required Bulk, at its cost, to prepare and submit to the Illinois Environmental Protection Agency ("IEPA") a report designed to achieve administrative closure of the JMS property "within a reasonable time." See Consent Decree, § VI (C)(2)(a)-(c). If Bulk was found to have failed to comply with its provisions, the consent decree required that Dhaliwal be held jointly and severally liable for the costs of enforcing compliance. See Consent Decree, § VI (C)(8).

       After more than three years with no administrative closure in sight, JMS brought petitions seeking sanctions and attorney's fees against Defendants. We referred these petitions to Magistrate Judge Keys, who issued his report and recommendations on June 14, 2001.[1] Judge Keys found that Defendants' record of "abysmal noncompliance" with the terms of the consent decree warranted an award of attorneys' fees. He calculated that JMS had spent $20,725.30 in efforts to enforce compliance

---

       [1]The parties asked for and received several extensions of the deadline for filing objections to Judge Keys' report as they attempted to settle their dispute; this explains the long delay between the issuance of the report and our review of it.

from April 28, 1998 to March 30, 2001 and suggested that any ambiguity in the fees be resolved in JMS' favor given Defendants' willful noncompliance. Judge Keys also recommended that JMS be allowed to pursue administrative closure of its property on its own by cleaning it up itself and charging the costs to Defendants.

Defendants and JMS have both filed written objections to Judge Keys' recommendations. Under Federal Rule of Civil Procedure 72(b), we conduct de novo review of those recommendations to which the parties have filed written objections. We turn first to Defendants' objections.

Defendants ask that we give them more time to achieve administrative closure of JMS property, claiming that they are currently negotiating to purchase the Zaltzmans' property and that this will put them in a better position to obtain the required "no further action" letter. Defendants, however, are out of time. The record amply shows that they have not used their best efforts to achieve administrative closure of the JMS property. By repeatedly terminating their attorneys and their environmental consultants, it appears that Defendants are simply seeking to delay enforcement of the consent decree. Indeed, their request today for more time is just one more example of this unacceptable pattern of delay.

Defendants also object to Judge Keys' recommendation that Defendants pay JMS $20,725.30 in fees and costs and his suggestion that ambiguity in the petition for fees and costs be interpreted in favor of JMS given the record of Defendants' noncompliance. They ask that we reduce the award of attorneys' fees by $9,405.00, arguing that the records JMS has provided are not detailed enough to determine that they were incurred in connection with enforcement of the consent decree. We have found no support in Illinois case law for the proposition that ambiguity in a petition for fees may be interpreted in favor of a prevailing party as punishment for malfeasance. Illinois law simply states that the party seeking attorneys' fees must provide sufficiently detailed evidence to show which services were performed, by whom they were performed, the time expended, and the hourly rate charged. *See Harris Trust Savings Bank v. Am. Nat'l Bank and Trust Co. of Chicago*, 594 N.E.2d 1308, 1312 (Ill.App.Ct. 1 Dist. 1992). After reviewing the record, we believe that the evidence submitted by JMS satisfies this standard and shows that the expenses do relate to the enforcement of the consent decree. Therefore, we find that Defendants owe JMS $20,725.30 for fees and costs. However, since

JMS acknowledges that Defendants have already paid JMS $10,362.65 in partial satisfaction of this judgment, see Pl.'s Objections at 2 n.1 (Jan. 30, 2002), we order Defendants to pay JMS the remaining $10,362.65.

JMS has also filed several objections. JMS argues that Judge Keys' recommendation that it clean up its property itself and charge the costs to Defendants is deficient in two respects. First, JMS notes that since the IEPA will not grant administrative closure on one property until the source property is remediated, cleaning up its own property will not achieve the goal of the consent decree. We agree. To achieve administrative closure of its property, JMS must have the power to clean up the source property. Therefore, although JMS neither owns nor controls the Zaltzmans' property, we hereby authorize JMS and any environmental consultants hired by JMS to enter that property and take any actions on that property reasonably necessary for the sole purpose of remediation. Whoever has day-to-day control of the property, be it the Defendants or the Zaltzmans, must allow JMS and its environmental consultants entry to the property for this purpose. We remand this matter to Magistrate Judge Keys and request that he monitor compliance with these orders.

Second, JMS argues that it lacks the capital to conduct the clean-up; moreover, even if it had the capital, billing the clean-up costs to Defendants would allow them to avoid payment by declaring bankruptcy. Instead, JMS asks that we require Defendants to deposit at least $150,000 in an escrow account from which it can withdraw money to cover the costs of cleaning up both sites. Given Defendants' track record in this matter, we believe that this would be a prudent course of action. We remand this matter to Judge Keys to determine the proper amount to be deposited in the escrow account and to construct the timetables and procedures governing deposits and withdrawals from this account.

JMS also claims that it is entitled to damages because it cannot sell its property before administrative closure. It argues that it should be awarded damages for the interest it lost on money that it would have received had it been able to accept an unspecified "bona fide offer." These proposed damages, however, are simply too speculative to award.

Finally, JMS has filed second petitions for sanctions and attorneys' fees against Defendants, claiming that it is entitled to $11,780.00 to cover its fees and costs in attempting to enforce compliance with the consent decree from April 1, 2001 to January 25, 2002 . We refer these petitions to Magistrate Judge Keys.

It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated _2/19/02_