# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin E. Aspen | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 95 C 3275 | **DATE** | 6/12/2002 |
| **CASE TITLE** | JMS Development Co. vs. Bulk Petroleum Corp. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's proposed Escrow Agreement Order, with revisions, is adopted. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | |
| ✓ | Copy to judge/magistrate judge. | | |

courtroom deputy's initials FT/*secy*

*number of notices* 6

**JUN 1 3 2002** date docketed

docketing deputy initials

6/12/2002 date mailed notice

FT mailing deputy initials

Date/time received in central Clerk's Office

**Document Number**

151

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JMS DEVELOPMENT COMPANY, )
                              )   No.  95 C 3275
           Plaintiff,         )
                              )   Judge Marvin E. Aspen
      v.                      )
                              )
BULK PETROLEUM CORPORATION,   )   Magistrate Judge
et al.                        )   Arlander Keys
                              )
           Defendant.         )
                              )



DOCKETED
JUN 1 3 2002

## MEMORANDUM OPINION AND ORDER

Currently before the Court are the parties' proposed Escrow
Agreements, governing the creation of an Escrow Account, designed
to enable Plaintiff to remediate its contaminated property in Des
Plaines, Illinois.  For the reasons set forth below, the Court
substantially adopts Plaintiff's proposed Escrow Agreement Order,
with revisions, as set forth below.

### BACKGROUND[1]

On September 18, 1997, Judge Aspen entered a Consent Decree,
which had been signed by Plaintiff, JMS Development Co. ("JMS"),
and Defendants, Bulk Petroleum Corporation ("Bulk") and Mr. Darshan
Dhaliwal, on August 25, 1997.  The Consent Decree required
Defendants[2] to achieve administrative closure of JMS' property with

---

[1]     Because the background facts in this case have been
presented in previous judicial decisions, this Order presumes
familiarity with the background facts leading up to the issuance
of Judge Aspen's February 20, 2002 Order.

[2]  The Consent Decree required Bulk to undertake cleanup of
JMS's property, imposing joint and several liability upon Mr.

the Illinois Environmental Protection Agency ("IEPA") within a reasonable time.

After years of enduring Defendants' delays, Plaintiff filed a number of petitions seeking attorneys fees and sanctions against Defendants for failing to comply with the terms of the Consent Decree. This Court issued a Report and Recommendation on June 14, 2001, recommending that: 1) Plaintiff's request for attorneys' fees be granted; and 2) Plaintiff be allowed to pursue administrative closure of its property, and charge the costs to Defendants. Both parties filed objections to the Court's June 14th Report with the district court.

On February 20, 2002, Judge Aspen awarded Plaintiff's attorneys' fees, but, based upon Plaintiff's objections, adopted a modified version of this Court's recommendation regarding the environmental cleanup of JMS's property. *JMS Development Co. v. Bulk Petroleum Corp.,* No. 95 C 3275, 2002 WL 252457, at *1 (N.D. Ill. Feb. 20, 2002). Because JMS cannot achieve administrative closure with regard to its own property until the adjacent Zaltman property (which is leased by Defendants) is remediated, the district court ordered that JMS be permitted access to the Zaltman property for the sole purpose of remediation. *Id.* at *2.

In response to Plaintiff's plea that it lacked the resources to fund the cleanup necessary to achieve administrative closure of

---

Dhaliwal if Bulk failed to act within a reasonable time.

its property -- as well as its fear that Defendants would declare bankruptcy to avoid reimbursing Plaintiff - the district court authorized the creation of an escrow account to fund the cleanup. *Id.* Judge Aspen granted Plaintiff's request that Defendants be required "to deposit at least $150,000 in an escrow account from which [Plaintiffs] can withdraw money to cover the costs of cleaning up both sites." *Id.* Judge Aspen then referred the matter to this Court to determine the necessary terms governing the creation and operation of the Escrow Account. *Id.*

The parties' efforts to reach an accord regarding the Escrow Account were fruitless. On April 10, 2002, the parties each submitted their own version of a proposed Escrow Agreement, supplementing their proposals via correspondence to the Court.

## DISCUSSION

The parties have submitted competing versions of a five paragraph Agreement that they propose to govern the creation and operation of the Escrow Account. The Court will discuss the parties' proposals regarding each paragraph in turn.

### Paragraph 1

JMS proposes the following:

"Within fourteen (14) days of entry of this Order:

a.   JMS, Bulk, and Dhaliwal shall open an Escrow Account at New Century Bank in Chicago, Illinois. Any disbursements from the Escrow Account shall require the signatures of both Sam Borek and Patrick G. Cooke.

b.   Bulk and Dhaliwal shall deposit the sum of $280,000 into

3

the Escrow Account."

Defendants raise three objections to JMS's proposed Paragraph 1. First, Defendants argue that they should be permitted to open the Escrow Account in a bank of their choosing, since they are funding the account. In response, Plaintiff asserts that, while it is amenable to having the Escrow Account at another bank, the Account should be opened at a bank in Chicago. Plaintiff persuasively reasons that, because the work is being performed in the Chicagoland area, and because Judge Aspen ordered the creation of the escrow account so that "[JMS] can withdraw money to cover the costs of cleaning up both sites," the bank should be convenient to JMS. Defendants have not suggested an alternate bank in the Chicagoland area, or explained why New Century Bank is unacceptable.

The Court agrees that the bank should be convenient to JMS, because JMS is responsible for submitting the waivers and obtaining the payouts for its contractors. Conversely, the Court fails to see the hardship created by requiring Defendants to transfer funds to New Century Bank; Defendants argue only that they should be permitted to select the bank because they are funding the cleanup. But Defendants forfeited their right to call the shots by dragging their feet for more than four years. If Defendants had offered a valid objection to New Century Bank, or proposed creating the Escrow Account at an alternate bank in the Chicagoland area, the

Court would have considered its position. They have not done so, and, therefore, the Escrow Account will be created at the New Century Bank in Chicago, Illinois.

Next, Defendants contend that the parties, not their attorneys, should be signatories on the Escrow Account. Defendants correctly note that the attorneys in this case may change over time (indeed, Defendants have employed four separate law firms over the course of this litigation), and that it would be unreasonable to obligate the attorneys in the manner Plaintiff suggests. Plaintiff counters that Defendants' well-documented inaction and lack of cooperation demands that payment to the contractors not be tied to Defendants' acquiescence. If Defendants' attorneys are unwilling to act as signatories, Plaintiff suggests that the Escrow Agreement permit disbursement of funds upon authorization from Plaintiff alone.

The Court agrees that the parties, not their attorneys, should be signatories on the Escrow Account. To discourage the bad-faith delay tactics envisioned by Plaintiff, the Court has created a structure, in Paragraph 3 of its Order, that compels payment to the contractors after the expiration of limited review periods. The parties are prohibited from delaying payment to a contractor beyond 35 days after the parties receive the contractor's invoice, unless both parties agree that the contractor's invoice is inaccurate. Defendants' failure to authorize disbursement in the manner

outlined in Paragraph 3 will result in the imposition of fines and attorneys fees.

In their final challenge to Paragraph 1, Defendants argue that the proposed $280,000 escrow deposit is excessive. Defendants point to Judge Aspen's Order, directing that they "deposit *at least* $150,000 in an escrow account from which [Plaintiff] can withdraw money to cover the costs of cleaning up both sites," *JMS Development Co.*, 2002 WL 252457, at *2 (emphasis added), and characterize the $150,000 amount as a "ceiling" on their financial obligations. Defendants suggest that the Court require a total deposit of $100,000, made in $25,000 increments over an undisclosed period of time.

Defendants' interpretation of the district court's order is preposterous. Standing alone, the language that Defendants rely upon clearly references a floor, not a ceiling, on the amount the district court anticipated for the remediation. The Consent Decree envisions, and the district court's February 20th order reiterates, that Defendants are obligated to fund the entire remediation, regardless of cost. Defendants' proposed $100,000 deposit finds no support whatsoever in the record.

Plaintiff's preliminary estimates indicate that the cost of remediating both its own property and the adjacent Zaltman property could exceed $400,000. The Court believes that requiring an initial deposit of $150,000, to be made within 21 days of this

6

Order, will enable Plaintiff to begin a prompt cleanup of the properties.

Once Plaintiff has submitted to the Court reliable and well-documented estimates for the remediation, Defendants will supplement the Escrow Account to cover the entire cost of the cleanup. The Court's Order requires Defendants to make two additional and equal deposits, 21 days and 42 days after Plaintiff submits its documentation to the Court, to enable Plaintiff to complete the remediation.

Defendants will not be heard to complain that the Court's timetable or the amount of the initial deposit creates an unworkable hardship; Defendants have had ample time to garner the resources necessary to achieve remediation. Defendants have been on notice since 1997 that they would be financially obligated for the remediation, and the district court informed Defendants on February 20, 2002 that the cost of remediation would be *at least* $150,000. Moreover, Defendants' ability to fund numerous court filings indicates that Defendants have the financial wherewithal to fund the remediation.

**Paragraph 2**

Defendants do not object to Plaintiff's proposed Paragraph 2, which sets forth the purpose of the Escrow Account. Therefore, the Court adopts Plaintiff's proposed Paragraph 2 and incorporates it into the Order.

## Paragraph 3

In this Paragraph, the parties hotly debate the appropriate mechanism for submitting and contesting invoices. Plaintiff suggests that the invoices should simply be submitted to the parties' attorneys, who must authorize payment within 14 days after receipt of any such invoices.

Defendants propose that the invoices be sent directly to the parties, with copies to their respective attorneys. Defendants' proposal also creates a review mechanism, permitting Defendants 30 days to dispute any invoice by giving written notice to Plaintiff[3]. If Defendants dispute all or part of an invoice, Plaintiff has an additional 30 days to "reach resolution with Bulk and Dhaliwal." If the parties successfully resolve the dispute, the contractor will be paid within 5 days of such resolution – or, up to 65 days after the parties receive the contractor's invoice! Worse yet, if Plaintiff cannot resolve the objection to Defendants' satisfaction, Defendants envision the contractors waiting for payment until such time as this Court, after reviewing briefs prepared and submitted by the parties, resolves the parties' dispute for them.

Plaintiff objects to granting Defendants the power to delay payments to the contractors in this regard, explaining that it would be difficult, if not impossible, to secure contractors

---

[3] Assuming that Defendants do not object to an invoice, Defendants suggest that the contractor should be paid within 45 days of the parties' receipt of the contractor's invoice.

willing to render services in exchange for an indefinite payment. Plaintiff has waited for more than four years to have its property remediated, and it opposes any mechanism that permits Defendants to arbitrarily delay payment to contractors, and potentially sidetrack the progress of the remediation for years to come.

The Court's Order strikes a balance between Defendants' request that it be permitted to object to invoices that appear inaccurate, and the Plaintiff's need for securing predictable and reliable payments for its contractors. The Court will permit Defendants to object to invoices they perceive to be unfair or inaccurate, but Defendants' objections will not indefinitely delay payment to the contractors.

The Court's Order grants Defendants fourteen days to provide Plaintiff with written notice of their objection to an invoice, or portion thereof. Plaintiff and Defendants will then have an additional fourteen days to attempt to resolve Defendants' objection to Defendants' satisfaction. If the parties are unable to achieve such resolution within this second fourteen-day period, the parties will nevertheless authorize payment to the contractor, in an amount to be determined by Plaintiff.

After the remediation has been completed, Defendants are free to present any and all unresolved Invoice Objections to this Court. This Court will review the objections and accept briefing from the parties. If the Court determines that Defendants' objections were

valid, Plaintiff must reimburse Defendants for any inaccurate or excessive payments. If Plaintiff's failure to resolve Defendants' objection was in bad faith, the Court may award Defendants' attorneys' fees.

The Court appreciates the difficulty that Plaintiff will likely face in attempting to recoup any such overpayments from its contractors. However, placing this burden on Plaintiff should sufficiently motivate Plaintiff to resolve Defendants' legitimate objections. This burden also justifies permitting Plaintiff, when faced with an unresolved Invoice Objection, to unilaterally reduce the payment to a contractor to a level it believes is justifiable[4].

**Paragraph 4**

The parties submit divergent proposals for Paragraph 4; the Court discusses each submission in turn. Plaintiff proposes that Paragraph 4 require Defendants to supplement the Escrow Account within 14 days, in the event that the Account's balance falls below $5,000 and the purposes set forth in Paragraph 2 have not yet been achieved. The Court agrees that Plaintiff's initial estimates might not sufficiently cover the necessary remediation, and that Defendants should be obligated to supplement the Account to achieve remediation. Plaintiff's proposal for achieving this goal is reasonable and the Court's Order adopts the proposal.

---

[4]    Presumably, Plaintiff will not sufficiently reduce the payment to satisfy Defendants – otherwise Defendants' objection will likely be resolved.

Defendants' proposed Paragraph 4 requests that Plaintiff be required to guarantee that the IEPA reimburse Defendants for all amounts it expends in achieving remediation. Defendants' request exceeds all limits of good judgment. While the Court will require Plaintiff to substantially cooperate with Defendants in their quest to obtain reimbursement from the IEPA, there is no basis in law or reason for requiring Plaintiff to pay Defendants for any amount the IEPA refuses to cover – particularly when the Consent Decree makes Defendants liable to pay for the entire remediation in the first instance. The Court outlines Plaintiff's obligation with regard to achieving IEPA reimbursement in Paragraph 6 of its Order.

**Paragraph 5**

The parties have submitted identical proposals requiring that any funds remaining in the Escrow Account following the completion of the remediation be returned to Defendants. The Court adopts the proposal in its Order.

**ESCROW AGREEMENT**

The Court substantially adopts Plaintiff's proposed Escrow Agreement. The terms governing the creation and operation of the Escrow Account are as follows:

1. Within twenty-one (21) calendar days of entry of this Order:

    a. JMS, Bulk, and Mr. Dhaliwal shall open an Escrow Account at New Century Bank in Chicago, Illinois. Any disbursements from the Escrow Account shall require the signatures of a designated

representative of JMS, and a designated representative of Bulk or Mr. Dhaliwal.

b.   Bulk and/or Mr. Dhaliwal shall deposit the sum of $150,000 into the Escrow Account.

c.   JMS shall submit to the Court documentation verifying the estimated amount for remediating the JMS property, as described in Exhibit A, and the estimated amount for remediating the adjoining real property, as described in Exhibit B.  The Court will issue an order approving or rejecting JMS's estimates, in short order.  The total cost for remediating both properties, less the $150,000 that Bulk and Mr. Dhaliwal are ordered to deposit within 21 days of this Order, shall be referred to as the "Excess Remediation Costs."

In the event that the cost of remediating both properties exceeds $150,000, Bulk and/or Mr. Dhaliwal shall, within (21) calendar days of the Court's approval of JMS's submission, deposit into the Escrow Account 50% of the Excess Remediation Costs. Within forty-two (42) calendar days of the Court's approval of JMS's submission, Bulk and/or Mr. Dhaliwal shall deposit into the Escrow Account the remaining 50% of the Excess Remediation Costs.

2.   The purpose of the Escrow Account shall be to pay for environmental remediation of, and obtain a "no further remediation" letter from the Illinois Environmental Protection Agency ("IEPA") regarding real estate owned by JMS at 9330-9340 West Ballard Road,

Des Plaines, Illinois (*See Exhibit A* for legal description).  To the extent necessary to achieve that purpose, the Escrow Account shall also pay for environmental remediation of the adjoining real property at 9001 Potter Road, Des Plaines, Illinois (a legal description of which is attached as Exhibit B).

3. Payment to the Contractors.

a. Notice and Payment. All invoices for work performed or expenses incurred by JMS's environmental consultant, HazChem Environmental Corporation, or any other contractors, subcontractors, or consultants designated by JMS (collectively, the "contractors"), in furtherance of the purpose set forth in Paragraph 2, shall be submitted promptly to JMS, and to Bulk and/or Mr. Dhaliwal (the "parties") at the following addresses:

JMS Development Company
4868 W. Dempster
Skokie, Illinois
60077
Fax:_____

Bulk Petroleum Corp. and
Mr. Darshan Dhaliwal
9653 North Granville Rd
Mequon, Wisconsin 53092
Fax: (262) 242-7849

with copies to:

Sam Borek
Borek & Goldhirsh
3545 W. Lake Ave.
Suite 200
Wilmette, IL 60091
Fax: (847) 251-5544

Thomas J. Verticchio
Patrick G. Cooks
Patzik, Frank & Samotny, Ltd.
150 S. Wacker Drive
Suite 900
Chicago, IL 60606
Fax: (312) 551-1101

Mechanic's lien waivers, for the charges invoiced, shall also be

provided to the parties noted above.

If, after expiration of the Review Period, as described in subparagraph (b) below, Bulk and/or Mr. Dhaliwal have not served upon JMS an Invoice Objection, the signatories to the Escrow Account shall authorize the payment of such invoice in full from the Escrow Account within fourteen (14) calendar days of Bulk and/or Mr. Dhaliwal's original receipt of such invoice or lien.

b. <u>The Review Period and Invoice Objections.</u> Upon receipt of the invoices, Bulk and Mr. Dhaliwal shall have fourteen (14) calendar days (the "Review Period") to dispute, in good faith, any such invoice by written notice to JMS, specifying in reasonable detail (i) the amount in dispute regarding such invoice and (ii) the basis for the dispute (collectively the "Invoice Objection"). As to any partial amount of such invoice not subject to objection, but to which an Invoice Objection has been served as to the other portions of the invoice, the signatories on the Escrow Account shall authorize payment of such undisputed amounts within twenty-one (21) calendar days of the original receipt of such invoice by Bulk and/or Mr. Dhaliwal.

c. <u>The Resolution Period.</u> If Bulk and/or Mr. Dhaliwal serve upon JMS an Invoice Objection, JMS shall have fourteen (14) calendar days from its receipt of such Invoice Objection to attempt to resolve Bulk and Mr. Dhaliwal's objection to the invoice (the "Resolution Period.") If JMS resolves Bulk and Mr. Dhaliwal's

Invoice Objection to their satisfaction, the signatories to the Escrow Account shall authorize the agreed-upon payment to the contractor from the Escrow Account, within five (5) calendar days of such resolution.

If JMS is unable to resolve Bulk and/or Mr. Dhaliwal's Invoice Objection to their satisfaction during the Resolution Period, the contractor will, nevertheless, be paid. Within five (5) calendar days after the expiration of an unsuccessful Resolution Period, JMS will unilaterally determine the amount the contractor should be paid, and both signatories shall authorize that payment from the Escrow Account to the contractor.

If Bulk and/or Mr. Dhaliwal refuse to authorize payment in accordance with this Paragraph, the Court will impose a fine commensurate to the delay and injury caused by Bulk and/or Mr. Dhaliwal's refusal, as well as the imposition of attorneys' fees and costs incurred by JMS in attempting to obtain the authorization necessary to pay its contractors.

d. Court Review. After the purpose of the Escrow Account, as described in Paragraph 2, has been achieved, Bulk and Mr. Dhaliwal may serve and file with the Court copies of all unresolved Invoice Objections. The parties may file motions requesting that the Court sustain or overrule each of the Invoice Objections. The Court will consider the parties' submissions regarding the Invoice Objections and issue an appropriate Order. In the event that the Court

sustains any or all of Bulk and Mr. Dhaliwal's Invoice Objections, JMS shall reimburse Bulk and Mr. Dhaliwal the amount the Court determines was inappropriately released from the Escrow Account. If the Court determines that JMS failed to respond to and resolve Bulk and Mr. Dhaliwal's Invoice Objections in bad faith, the Court may award Bulk and Mr. Dhaliwal's reasonable attorneys' fees and expenses incurred in filing and defending such Invoice Objections with the Court.

4. If the balance in the Escrow Account falls below $5,000 at any time prior to the achievement of the purpose set forth in Paragraph 2, and JMS's environmental consultant determines that additional funds will be necessary to fully achieve that purpose, JMS shall submit a written notice to Bulk and Mr. Dhaliwal, setting forth the amount and purpose of the additional funds needed. JMS will support its request for additional funds with documentation establishing both the amount and purpose of the additional funds. Within fourteen (14) calendar days after Bulk and Mr. Dhaliwal's receipt of that notice, Bulk and Mr. Dhaliwal shall deposit the additional funds requested in the Escrow Account.

5. Within forty-five (45) calendar days after the purpose set forth in Paragraph 2 is achieved, all funds remaining in the Escrow Account shall be returned to Bulk and Mr. Dhaliwal.

6. JMS shall substantially cooperate with Bulk and Mr. Dhaliwal in Bulk and Mr. Dhaliwal's efforts to obtain reimbursement for the cleanup from the IEPA. Any reimbursement obtained from the IEPA by JMS shall be forwarded to Bulk and Mr. Dhaliwal within fourteen (14) calendar days.

## CONCLUSION

After reviewing the parties' proposed Escrow Agreement orders, the Court adopts, with revisions, Plaintiff's proposed order. The evidence before the Court indicates that the remediation costs that will be incurred to achieve administrative closure will exceed $150,000. The Court readily concludes that Defendants must deposit into the Escrow Account $150,000 within 21 days of this Order. However, Plaintiff has not submitted a well-documented estimate of the remediation costs. Therefore, the Court directs Plaintiff to submit such documentation to the Court, and requires Defendants to make two additional deposits, if necessary to permit Plaintiff to complete the necessary remediation.

The Court agrees with Defendants that the parties or their designated representatives, not their respective counsel, should be the signatories on the Escrow Account. However, given the delay that has occurred thus far in the remediation efforts, the Court's Order imposes penalties upon Defendants for failing to authorize payment of the invoices in accordance with the terms of this Order.

Similar reasons warrant delaying resolution of contested Invoice Objections until the completion of the remediation; payments to the environmental consultants, contractors, and subcontractors will not be contingent upon Bulk and/or Mr. Dhaliwal's acceptance of JMS's proposed resolutions to their Invoice Objections.

Finally, the Court finds that it is not Plaintiff's burden to guarantee the IEPA's reimbursement of the remediation costs. However, Plaintiff is directed to use its best efforts to assist Defendants in achieving such reimbursement.

**IT IS SO ORDERED.**

Dated: June 12, 2002     ENTER:

ARLANDER KEYS
United States Magistrate Judge

# Exhibit A

## LEGAL DESCRIPTION

THE EAST 484.0 FEET OF THE WEST 534.02 FEET (AS MEASURED ALONG THE SOUTH LINE OF LOT 6) OF THE NORTH 180.0 FEET OF THE SOUTH 230.0 FEET, MEASURED AT RIGHT ANGLES, OF THAT PART OF LOT 6 IN FREDRICH MEINSHAUSEN'S DIVISION OF LANDS, IN SECTIONS 15 AND 16, TOWNSHIP 41 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING NORTH OF THE CENTER LINE OF BALLARD ROAD, (SAID CENTER LINE BEING ALSO THE SOUTH LINE OF SAID LOT 6) AND LYING EAST OF THE WEST LINE OF THE NORTHEAST 1/4 OF THE SOUTHWEST 1/4 OF SAID SECTION 15, (SAID LINE BEING ALSO THE WEST LINE OF SAID LOT 6), EXCEPTING FROM THE ABOVE DESCRIBED TRACT THE SOUTH 200.95 FEET (AS MEASURED AT RIGHT ANGLES TO THE SOUTH LINE THEREOF) OF THE WEST 205.95 FEET (AS MEASURED AT RIGHT ANGLES TO THE WEST LINE THEREOF) IN COOK COUNTY, ILLINOIS.

Common Address:   9340-9380 Ballard Road, Des Plaines, Illinois

# EXHIBIT B

## LEGAL DESCRIPTION

The South 200.95 feet of the West 205.95 feet, both as measured at right angles, of Lot 6 in Fredrich Meinshausen Divisions of Lands, in Sections 15 and 16, Town 41 North, Range 12, East of the Third Principal Meridian, the West line of the Northeast 1/4 of the Southwest 1/4 of said Section 15 being the West line of Lot 6 and the center line of Ballard Road being the South line of Lot 6, in Cook County, Illinois (except the part thereof in Potter and Ballard Roads), said premises being located at the Northeast corner of Potter and Ballard Roads and having an approximate frontage of 206 feet on Ballard Road and 201 feet on Potter Road, said measurements being to the center line of both roads.

Commonly Known as:

9001 North Potter Road
Des Plaines, Illinois
P.I.N.: 09-15-303-006