# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin E. Aspen | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 95 C 3275 | **DATE** | 9/17/2002 |
| **CASE TITLE** | JMS Development Co. vs. Bulk Petroleum Corp. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Second Supplemental Petition for Attorney's Fees be, and the same hereby is, granted. The Court awards Plaintiff $10,649.50 in fees and costs. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 5 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 19 2002 date docketed | 159 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 9/17/2002 | |
| | | | date mailed notice | |
| FT | courtroom deputy's initials | 02 SEP 18 PM 3:34 | FT | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION
```

| | | |
|---|---|---|
| JMS DEVELOPMENT COMPANY, | ) | |
| | ) | No.  95 C 3275 |
| Plaintiff, | ) | |
| | ) | Judge Marvin E. Aspen |
| v. | ) | |
| | ) | |
| BULK PETROLEUM CORPORATION, | ) | Magistrate Judge |
| et al. | ) | Arlander Keys |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DOCKETED SEP 1 9 2002**

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Plaintiff's Second Supplemental Petition for Attorney's Fees. For the reasons set forth below, Plaintiff's Motion is Granted.

### BACKGROUND[1]

On September 18, 1997, Judge Aspen entered a Consent Decree, which had been signed by Plaintiff, JMS Development Co. ("JMS"), and Defendants, Bulk Petroleum Corporation ("Bulk") and Mr. Darshan Dhaliwal, on August 25, 1997. The Consent Decree required Defendants[2] to achieve administrative closure of JMS' property with the Illinois Environmental Protection Agency ("IEPA") within a reasonable time.

---

[1] Because the background facts in this case have been presented in previous judicial decisions, this Order presumes familiarity with the background facts leading up to the issuance of Judge Aspen's February 20, 2002 Order.

[2] The Consent Decree required Bulk to undertake cleanup of JMS's property, imposing joint and several liability upon Mr. Dhaliwal if Bulk failed to act within a reasonable time.

After years of enduring Defendants' delays, Plaintiff filed a number of petitions seeking attorneys fees and sanctions against Defendants for failing to comply with the terms of the Consent Decree. This Court issued a Report and Recommendation on June 14, 2001, recommending that: 1) Plaintiff's request for attorneys' fees be granted; and 2) Plaintiff be allowed to pursue administrative closure of its property, by remediating the property itself, and charging the clean-up costs to Defendants. Even though Plaintiff received the relief it requested, Plaintiff filed objections to the June 14, 2001 Report and Recommendation with the district court. In its objections, Plaintiff expressed its concerns, for the first time, that this Court's recommendation (ie., a recommendation that Plaintiff be permitted to remediate its property at Defendants' expense) was insufficient to protect Plaintiff's interests.[3] Plaintiff asked the district court to order Defendants to deposit funds for the remediation into an escrow account.

On February 20, 2002, Judge Aspen granted, largely, Plaintiff's request. In addition to other relief, the district court authorized the creation of an escrow account to fund the cleanup. *JMS Development Co. v. Bulk Petroleum Corp.*, No. 95 C 3275, 2002 WL 252457, at *2 (N.D. Ill. Feb. 20, 2002). Judge Aspen

---

[3] Plaintiff argued that it lacked the resources to fund the cleanup necessary to achieve administrative closure of its property and expressed its concern that Defendants would declare bankruptcy to avoid reimbursing Plaintiff.

2

directed Defendants "to deposit at least $150,000 in an escrow account from which [Plaintiffs] can withdraw money to cover the costs of cleaning up both sites." *Id.* Judge Aspen then referred the matter to this Court to determine the necessary terms governing the creation and operation of the Escrow Account[4]. *Id.* In addition, the district court referred Plaintiff's petition, which claims that Plaintiff is entitled to $11,870 in fees and costs incurred in attempting to enforce compliance with the consent decree from April 1, 2001 to January 25, 2002. *Id.* This petition is the subject of the Court's present order.

**DISCUSSION**

In *Hensley v. Eckerhart,* the United States Supreme Court set forth the standard for courts to employ when reviewing fee petitions. 461 U.S. 424, 433-35 (1983). The Court explained that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly wage." *Id.* at 433. (labeling this equation the lodestar method.) The Court will examine each component of the lodestar method in turn.

---

[4] The parties' efforts to reach an accord regarding the Escrow Account were fruitless. On April 10, 2002, the parties each submitted their own version of a proposed Escrow Agreement, supplementing their proposals via correspondence to the Court. On June 12, 2002, this Court issued a Memorandum Opinion and Order adopting Plaintiff's proposed escrow agreement, with modification. The escrow account has been established and is being funded by Defendants.

3

## A. Counsel's Reasonable Rate

An attorney's reasonable rate is the rate the attorney commands in the market, or the market rate. *People Who Care v. Rockford Board of Education School Dist. No. 205,* 90 F.3d 1307, 1310 (7th Cir. 1996). (the burden is on fee applicant to establish market rate.) "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *Id.* Additional evidence of market rate includes fees awarded to the attorney in similar cases, or "affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work." *Spegon v. The Catholic Bishop of Chicago,* 175 F.3d 544, 556 (7th Cir. 1999). "Once an attorney provides evidence of his billing rate, the burden is upon the defendant to *present evidence* establishing 'a good reason why a lower rate is essential.'" *People Who Care v. Rockford Board of Education School Dist. No. 205,* 90 F.3d 1307,1313 (7th Cir. 1996) (emphasis added) (quoting *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1151 (7th Cir. 1993)).

This Court has previously recommended that Plaintiff's counsel receive fees commensurate with its requested rate. Not surprisingly, Defendants do not challenge Plaintiff's counsel's market rate, as claimed in its Second Supplemental Petition for Fees, as excessive or unreasonable. The Court will, therefore, award fees consistent with Plaintiff's counsel's requested rate.

4

## B. Reasonableness of Expended Time

In addition to determining the attorneys' reasonable rate, the Court will award only those fees for time that is properly documented and reasonably expended. A court may find that fees are unreasonable if the attorney failed to achieve a successful result, was inefficient and duplicitous, or inadequately documented her time. *People Who Care,* 90 F.3d at 1314. The Court may not, however, "'eyeball' the fee request and 'cut it down by an arbitrary percentage because it seemed excessive to the court.'" *Id.* (quoting *Spellan v. Bd. of Educ. for Dist. 111,* 59 F.3d 642, 647 (7th Cir. 1995)).

Where the documentation of hours is inadequate, or the description of services is vague, the Court may reduce or deny the award accordingly. *Webb v. James,* 967 F. Supp. 320, 323 (N.D. Ill. 1997). The party opposing a fee petition has a similar obligation; "[c]ounsel who opposed the fees have a similar responsibility to state objections with particularity and clarity." *Ohio-Sealy Mattress,* 776 F.2d at 664. "If a defendant fails to specifically object to the requested attorneys' fees, the Court will generally award the requested fees." *Northwestern Nat.'l Life Ins. Co. of Milwaukee Wis. v. Lutz,* 933 F. Supp. 730, 732 (C.D. Ill. 1996).

Defendants concede that Plaintiff is entitled to fees for work related to the enforcement of the Consent Decree. However, Defendants contend that many of the requested fees are unrelated to

5

the enforcement of the Consent Decree, and that other requested fees are grossly disproportionate to the work performed. Defendants specifically claim that: 1) time spent attempting to settle this case does not "involve enforcement of the Consent Decree" and is not compensable; 2) Plaintiff's 10/10/01 entry consists of secretarial or paralegal work that is not related to enforcement of the Consent Decree and is not compensable; 3) communications between Plaintiff's attorneys are not compensable; 4) Plaintiff is not entitled to fees incurred as a result of its Second Petition for Rule to Show Cause, because the Petition was brought in bad faith; 5) Plaintiff's "block billed" entries should be stricken; and 6) Plaintiff billed an excessive amount of time preparing its objections to this Court's Report and Recommendation.

Initially, the Court rejects Defendants' contention that Plaintiff should not be compensated for attempting to settle this case. Had Defendants satisfied its obligations under the Consent Decree, the additional negotiations would not have been required. Defendants' recalcitrance, as is thoroughly discussed in prior court opinions, necessitated the additional expense and they will be required to pay for this time.

Next, the Court disagrees that Plaintiff's 10/10/01 entry consists of purely noncompensable secretarial time. However, the Court does find that 6 hours for reviewing and updating pleadings, correspondence and other files, and reviewing this Court's 6/14/01

6

Report and Recommendation, without further explanation, is excessive. Therefore, the Court reduces the entry by 2 hours.

With regard to Defendants' third objection, Defendants offer no caselaw in support of their contention that communications between Plaintiff's attorneys are not compensable. Moreover, Defendants mischaracterize the entries that allegedly highlight such practices. For example, Defendants claim that Plaintiff should not be permitted to recover for attorney SB's 1/7/02 entry. However, this entry documents Plaintiff's attorney's conversation with United Environmental regarding a report that was critical to the parties' remediation plans, and which Defendants neglected to tell Plaintiff had been submitted in November of the previous year. The Court finds that Plaintiff is clearly entitled to compensation for this time.

The Court also rejects Defendants' contention that Plaintiff is not entitled to fees incurred as a result of its Second Petition for Rule to Show Cause. Although this Court did not grant this Petition, the Petition was neither frivolous nor brought in bad faith. The Petition detailed Defendants' repeated attempts to stall or delay the remediation of the subject property, and formed the basis of this Court's June 12, 2002 Opinion and Order. Therefore, the Court finds that the time is compensable.

Defendants' final objections fare better. Block billing is inappropriate and prevents the Court from assessing the

reasonableness of the time expended on certain tasks. *Reyes v. Nations Title Agency of Illinois, Inc.*, No. 00 C 7763, 2001 WL 687451, at *2 (N.D. Ill. June 19, 2001) (reducing the amount of fees block-billed by 10%). This problem is exacerbated by the fact that the Court agrees that it should reduce the fees for time Plaintiff spent objecting to this Court's Report and Recommendation. The Court acknowledges that the district court largely adopted Plaintiff's objections. However, Plaintiff could have raised those same issues - ie., the necessity of creating an escrow account - in the briefs it filed with this Court in the first instance. Because Plaintiff would likely have spent additional time preparing those briefs had it incorporated its Escrow request in the first instance, the Court reduces those entries related to preparing the objections by only 10%[5].

The Court reduces the following entries by 10%, because they relate to the filing of objections: 1) 8/3/01; 2) 10/11-12/01; 3) 10/15/02; 4) 10/31/01/; 5) 11/26/01; 6) 1/11/02 (SB); 7)1/15/02 (SNK); 8) 1/16-18/02; 8) 1/22/02; 9) 1/24/02; and 10) 1/25/02. The Court also reduces the 10/10/01 entry by 2 hours, because the time expended was excessive, and by 10%, because Plaintiff block billed

---

[5] The Court will not reduce block billed entries that do not refer to time devoted to Plaintiff's Objections to the Report and Recommendation, because 1) the Court has determined that all other requested time was devoted to permissible tasks and 2) Defendants do not argue (with the exception of the 10/10/01 entry and time devoted to the Objections)that Plaintiff's time was excessive.

8

and included time devoted to its Objections. Therefore, the Court orders Defendants to pay Plaintiff $ 10,649.50 in attorneys fees and costs.

## CONCLUSION

For the reasons set forth above, the Court awards Plaintiff $10,649.50 in fees and costs.

**IT IS HEREBY ORDERED** that Plaintiff's Second Supplemental Petition for Attorney's Fees be, and the same hereby is, **GRANTED**.

Dated: September 17, 2002     ENTER:

_____
ARLANDER KEYS
Unites States Magistrate Judge