UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JMS Development Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:95-CV-3275 |
| | ) | Hon. Marvin E. Aspen |
| Bulk Petroleum Corporation, et al. | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This matter is before us on Plaintiff JMS Development Company's ("JMS") objections to Magistrate Judge Finnegan's December 9, 2019 Report and Recommendation ("R&R") as to Defendants' Bulk Petroleum Corporation, et al.'s (collectively, "Bulk") Motion Determining Unresolved Invoice Objections. (R&R (Dkt. No. 345); R&R Objections (Dkt. No. 346); Motion (Dkt. No. 321).) JMS's objects only to Magistrate Judge Finnegan's recommendation that it be required to reimburse Bulk in the amount of $186,751.09. (R&R Objections (Dkt. No. 346) at 1.) For the reasons explained below, we overrule JMS's objections and adopt Magistrate Judge Finnegan's R&R.

**BACKGROUND**

This case dates to June 1995. In the Complaint, JMS alleged that Bulk's petroleum storage tanks polluted JMS's property. (Compl. (Dkt. No. 1) ¶¶ 19–23.) Then in 1997 we approved an agreed-to consent decree of the parties and dismissed the case. (*See, e.g.*, Order (Dkt. No. 60); Consent Decree (Dkt. No. 62).) Among other things, the Consent Decree required Bulk, at its sole cost and expense, to use its best efforts to clean-up JMS's property and to achieve administrative closure of it with the Illinois Environmental Protection Agency ("IEPA") with a reasonable timeframe. (Consent Decree (Dkt. No. 62).) We referred post-decree

enforcement matters to Magistrate Judge Arlander Keys (ret.). (Dkt. No. 64.) Due to years of Bulk's delays, Magistrate Judge Arlander Keys (ret.) issued a Memorandum Opinion and Order on June 15, 2001 that recommended "JMS be allowed to obtain administrative closure of the property . . . and charge all ensuing expenses directly to [Bulk] . . .." *JMS Dev. Co. v. Bulk Petroleum Corp.*, No. 95-CV-3275, 2001 WL 686676, at *6 (N.D. Ill. June 15, 2001) (June 14, 2001 Order (Dkt. No. 104) at 19.) We adopted that recommendation with certain modifications. Case No. 95-CV-3275, 2002 WL 252457 (N.D. Ill. Feb. 20, 2002). (February 19, 2002 Order (Dkt. No. 126) at 2.) Judge Keys outlined the terms of that arrangement in a separate Memorandum Opinion and Order dubbed the "Escrow Order." *JMS Dev. Co. v. Bulk Petroleum Corp.*, No. 95-CV-3275, 2002 WL 1303129, at *5 (N.D. Ill. June 13, 2002). (Escrow Order (Dkt. No. 151 at 2.) The Escrow Order tweaked how the parties were to comply with the Consent Decree. (Escrow Order (Dkt. No. 151).) Relevant to the instant dispute, the Escrow Order provides that JMS would take over the clean-up process on its own property (and, as necessary, the adjacent gas station property), and required Bulk to advance the anticipated cost of the clean-up with funds placed in an escrow account. (*See id.*) Per that Escrow Order, JMS faced the possibility of having to reimburse Bulk for any amount inappropriately paid out to contractors. *JMS Dev. Co.*, 2002 WL 1303129 at *7. Moreover, the Escrow Order stated that although it is not JMS's burden to guarantee the IEPA's reimbursement of the remediation costs, JMS was required to use its "best efforts" to help obtain reimbursement from the IEPA. *See id.* at *8.

Around the time that escrow account was created, Bulk filed an amended motion to stay remediation. (Dkt. No. 166). Bulk reasoned that it required a stay so that JMS could obtain pre-approval of a Corrective Action Plan ("CAP") from the IEPA. Bulk opposed that motion to stay and argued that CAP pre-approval was not necessary because JMS could incorporate the

2

remediation work into an approved CAP at a later date. (Dkt. No. 168.) Magistrate Judge Keys denied that motion to stay and ordered JMS to cooperate with Bulk's attempt to recover reimbursement from IEPA for the cost of remediation. (Dkt. No. 167.) Bulk had deposited more than $400,000 into an escrow account. (*See, e.g.*, Dkt. No. 213 ¶ 3.) Then, in March 2007, the IEPA rejected the entire reimbursement amount on the grounds that supporting documentation of a CAP was not provided. (*See* Dkt. No. 220 ¶ 5 (citing March 2007 IEPA Letter).)[1]

## LEGAL STANDARD

We review Magistrate Judge Finnegan's R&R *de novo* as the underlying Motion for an Order Determining Unresolved Invoice Objections is best characterized as a dispositive motion. Fed. R. Civ. P. 72(b)(3). Arguments not made before a magistrate judge are waived and "district courts should not consider arguments not raised initially before the magistrate judge, even though their review in cases . . . is de novo." *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000).

## ANALYSIS

Bulk's motion sought to recover a total of $328,207 from JMS under the Escrow Order, including $186,751.09 for costs not incorporated into an approved CAP. Magistrate Judge Finnegan recommended that JMS be required to reimburse bulk in the amount of $186,751.09 for costs not incorporated into an approved CAP. JMS objects to Magistrate Judge Finnegan's recommendation. (R&R Objections (Dkt. No. 346) at 1.)

---

[1] Magistrate Judge Keys has since retired so we referred Bulk's Renewed Motion for an Order Determining Unresolved Invoice Objections to Magistrate Judge Finnegan for a report and recommendation. (Motion (Dkt. No. 321).)

The IEPA's Brian Bauer testified that any expense or cost not associated with an approved CAP would not be reimbursed. (Bauer Dep. (Dkt. No. 341–30) at 5.) JMS did not use its best efforts to incorporate this work into a CAP that was approved by the IEPA. This inevitably meant that the IEPA would not reimburse that work. So, Bulk seeks to recover $186,751.09 for soil remediation work for which the IEPA did not reimburse.

Our holding mirrors Magistrate Judge Finnegan's thorough reasoning on this point as set forth in her Report and Recommendation. In short, JMS had a duty to use its best efforts to help Bulk obtain reimbursement and JMS failed to live up to its obligation to do that. As a result, Bulk incurred an additional $186,751.09 in costs. We adopt Magistrate Judge Finnegan's R&R (R&R (Dkt. No. 345) at 28–33)[2] and order JMS refund Bulk $186,751.09.

## CONCLUSION

For the foregoing reasons, we find that JMS did not fulfil its Escrow Order obligations with respect to certain costs that were not incorporated into an approved CAP, and thus not reimbursed by the IEPA. We adopt Magistrate Judge Finnegan's R&R. JMS is ordered to refund $186,751.09 to Bulk.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: January 10, 2020
Chicago, Illinois

---

[2] JMS raises new arguments for the first time before us that were not first presented to Magistrate Judge Finnegan. To the extent that JMS presents arguments for the first time before us that could have been presented to the Magistrate Judge, we refuse to entertain those arguments. *See United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) ("district courts should not consider arguments not raised initially before the magistrate judge, even though their review in cases . . . is de novo.") A "willingness to consider new arguments at the district court level would undercut the rule that the findings in a magistrate judge's report and recommendation are taken as established unless the party files objections to them." *Melgar*, 227 F.3d at 1040 (7th Cir. 2000). Nevertheless, JMS's new arguments are contradicted by the record.